UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| MICHAEL PASSMORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:23-cv-00224-JPH-MJD |
| | ) | |
| INDIANA DEPARTMENT OF CORRECTIONS, | ) | |
| ZATECKY PCF Warden, | ) | |
| J. MCCLAIN PCF Mailroom Supervisor, | ) | |
| EVENS PCF Supervisor Internal Affair, | ) | |
| SMITH IA lead investigator, | ) | |
| | ) | |
| Defendants. | ) | |

**Order Screening Complaint and Directing Further Proceedings**

Plaintiff Michael Passmore is a prisoner currently incarcerated at Putnamville Correctional Facility ("Putnamville"). He filed this civil rights action alleging a variety of constitutional and state law claims based on the confiscation of publications he had ordered. Because Mr. Passmore is incarcerated, the Court must screen his complaint before serving the defendants. 28 U.S.C. § 1915A.

**I. Screening Standard**

When screening a complaint, the Court must dismiss any portion that is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). To determine whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Schillinger v. Kiley*, 954 F.3d 990, 993 (7th Cir. 2020). Under that standard, a complaint must include "enough facts to state a claim to

relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court construes *pro se* complaints liberally and holds them to a "less stringent standard than formal pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

## II. The Complaint

The complaint names five defendants: (1) Indiana Department of Correction ("IDOC"); (2) Putnamville Warden Dushan Zatecky; (3) mailroom supervisor J. McClain; (4) Internal Affairs Supervisor Evans; and (5) Internal Affairs Lead Investigator J.R. Smith. Mr. Passmore seeks damages and injunctive relief.

Mr. Passmore alleges that the defendants wrongfully confiscated several books and publications in violation of his First Amendment rights. He alleges that he has subscribed to "the very mild history magazine *The Barnes Review* since 1997" and has received those magazines and other publications from *The Barnes Review*'s publisher, TBR, without incident until mailroom clerk J. McClain and Mr. Evans confiscated the magazine and two books in June 2021. Dkt. 2 at 4, 7. According to the grievances attached as an exhibit to the complaint, the books, *Red Republicans and Lincoln's Marxists: Marxism in the Civil War* and *The War Against Whites: The Racial Psychology Behind the Anti-White Hatred Sweeping the West* were confiscated on the basis that they

2

contained racial slurs and Security Threat Group material and because they violate the safety and security of staff and the facility. Dkt. 2-2 at 14, 17. With respect to *The Barnes Review,* Warden Zatecky told Mr. Passmore, "The magazine content poses a threat to the security of the facility. It falls in line with ideas associated with white supremacy and is considered an antisemitic organization. This issue falls within the Security Threat Group umbrella and the magazine will not be allowed into the facility." Dkt. 2-2 at 21.

Mr. Passmore disputes that the materials were actually inspected and states that the books do not promote violence or contain racial slurs. He also states that he successfully received *Red Republicans and Lincoln's Marxists: Marxism in the Civil War* from a different source and has since received publications from TBR, demonstrating that the prison's application of its policies is arbitrary.

Mr. Passmore believes that the confiscations occurred out of retaliation for filing grievances and lawsuits. Mr. Passmore alleges that McClain was upset that Mr. Passmore had filed a grievance against McClain for confiscating a Celtic cross and received relief. He also believes that McClain inflates the prices of outgoing mail because the cost of postage to receive the books was only $5.00, but it cost him $15.00 to mail them back out. He also believes that the Internal Affairs staff retaliated against him because a defendant in one of his pending lawsuits is now an investigator in that department. With respect to Warden Zatecky, he alleges that the warden agrees with grievance responses without investigating the underlying facts.

Mr. Passmore denies that he is a white supremacist. He says he is a "Messianic/Judaic Christian and should not be persecuted because of it." Dkt. 2 at 10. He also alleges that he is being discriminated against because books about white people and white culture are banned, while books targeted to people of color are allowed.

Mr. Passmore believes that his rights under the First and Fourteenth Amendment have been violated. He brings the following claims: (1) *Monell* claims against the IDOC; (2) First Amendment religious discrimination and free speech claims against all defendants; (3) First Amendment retaliation claim against all individual defendants; (4) negligent training and failure to supervise claims against all individual defendants; (5) negligence claims against all defendants; (6) Fourteenth Amendment equal protection claims against all individual defendants; and (7) civil conspiracy claims against all individual defendants.

### III. Discussion of Claims

Applying the screening standard to the factual allegations in the amended complaint, some claims shall proceed while others shall be dismissed for failure to state a claim upon which relief can be granted.

**Claim One: *Monell* Claims**

Mr. Passmore's policy-or-practice claims under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690−91 (1978), must be **dismissed for failure to state a claim**. *Monell* permits suits against municipalities or private corporations acting in the place of the state if their policy, practice, or custom caused a constitutional violation. But individuals cannot sue state agencies like the IDOC under *Monell*

4

due to the Eleventh Amendment to the United States Constitution and the doctrine of sovereign immunity. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70–71 (1989) (holding "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983" and distinguishing *Monell* because "States are protected by the Eleventh Amendment while municipalities are not"); *Kentucky v. Graham*, 473 U.S. 159, 165–67 and n.14 (1985) (suit for damages against state officer in official capacity is barred by the Eleventh Amendment).

Because the Eleventh Amendment prevents a lawsuit for damages against the IDOC, all claims against the IDOC for damages are **dismissed** and will not be discussed further.

### Claim Two: First Amendment Religious Discrimination and Free Speech Claims

"The First Amendment right to free speech also includes the right to read." *White v. Sloop*, 772 F. App'x 334, 336 (7th Cir. 2019) (citing *Miller v. Downey*, 915 F.3d 460, 463 (7th Cir. 2019)). But prison officials "have 'great latitude' to restrict that right so long as the limitations reasonably relate to legitimate penological interests.'" *Id.* (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

In *White*, 772 F. App'x at 336, the Seventh Circuit upheld dismissal of a case at screening in which the plaintiff sought to receive mail containing white supremacist ideology. There, the confiscated mail "featured the ideology of skinheads, a white supremacist group that embraces violence and the threat of violence as a method of advancing their views." *Id.* (cleaned up). Here, the warden approved the confiscation of *The Barnes Review* because it espoused antisemitic

and white supremacy viewpoints. Dkt. 2-2 at 21. Other books were disallowed because they contained racial slurs and could affect prison security. Mr. Passmore disputes, however, that the magazine and other books published by TBR promote violence or otherwise pose a threat to security. Thus, at this juncture, the Court will allow Mr. Passmore's First Amendment free speech claims to **proceed** against defendants McClain, Smith, Evans, and Zatecky. To the extent Mr. Passmore seeks injunctive relief, an official capacity claim **shall also proceed** against Warden Zatecky since "he would be responsible for ensuring that any injunctive relief is carried out." *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011).

Any claims related to Mr. Passmore's ability to practice his religion are **dismissed for failure to state a claim.** "[A] substantial burden on the free exercise of religion . . . is one that forces adherents of a religion to refrain from religiously motivated conduct, inhibits or constrains conduct or expression that manifests a central tenet of a person's religious beliefs, or compels conduct or expression that is contrary to those beliefs." *Koger v. Bryan,* 523 F.3d 789, 798 (7th Cir. 2008). Mr. Passmore does not include any allegations from which one can infer that confiscation of a book about communism in the Civil War, a book

about racial psychology, or a history magazine affects his ability to practice his "Messianic/Judaic Christian" beliefs.

### Claim 3: First Amendment Retaliation

To state a retaliation claim, a plaintiff must allege that (1) he engaged in protected First Amendment activity; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the protected activity was a motivating factor in Defendants' decision to take the allegedly retaliatory action. *Taylor v. Van Lanen,* 27 F.4th 1280, 1284 (7th Cir. 2022).

Retaliation claims **shall proceed** against defendants McClain, Evans, and Smith on the basis that Mr. Passmore alleges that they disapproved his books because of his litigation and grievance activities. But any retaliation claim against Warden Zatecky is **dismissed**. "Individual liability under § 1983 … requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago,* 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted). Mr. Passmore includes no factual allegations from which the Court could infer that Warden Zatecky was motivated by Mr. Passmore's protected activity when he denied the grievances.

### Claim 4: Negligent Training/Failure to Supervise

Mr. Passmore alleges that the defendants who were supervisors failed to "hold their employees accountable for their misconduct." Dkt. 2 at 23.

"Liability under § 1983 is direct rather than vicarious; supervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly." *Horshaw v. Casper,*

910 F.3d 1027, 1029 (7th Cir. 2018). Further, failure to train claims cannot be maintained against individual defendants but instead are generally brought against municipalities under *Monell. Brown v. Budz*, 398 F.3d 904, 918 (7th Cir. 2005) ("[F]ailure to train claims are usually maintained against municipalities, not against individuals, and, in the Eighth Amendment context, such claims may only be maintained against a municipality.") (citation omitted).

The Court has permitted First Amendment free speech and retaliation claims against the individual defendants based on their own conduct. Any failure-to-train or failure-to-supervise claims are **dismissed** because they are not cognizable against these defendants.

### Claim 5: Negligence

Mr. Passmore asserts a negligence claim against the defendants. "A plaintiff seeking damages for negligence must establish (1) a duty owed to the plaintiff by the defendant, (2) a breach of the duty, and (3) an injury proximately caused by the breach of duty." *Pfenning v. Lineman*, 947 N.E.2d 392, 398 (Ind. 2011). A state law negligence claim can proceed against an individual state employee only if the plaintiff alleges "that an act or omission of the employee that causes a loss is (1) criminal; (2) clearly outside the scope of the employee's employment; (3) malicious; (4) willful and wanton; or (5) calculated to benefit the employee personally." Ind. Code § 34-13-3-5(c)(1)). Negligence claims **shall proceed** against defendants McClain, Evans, and Smith on the basis that Mr. Passmore alleges that they disapproved his books for retaliatory reasons, which could be considered malicious, and, in McClain's case, that he/she inflated the

cost of postage. Because there are no allegations that could support a finding that his decision-making was malicious, willful, or wanton, or calculated to benefit him, negligence claims against Warden Zatecky are **dismissed**.

### Claim 6: Fourteenth Amendment Equal Protection

Mr. Passmore's equal protection claim **shall proceed** against the individual defendants on the theory that they confiscated publications about white culture or beliefs but permitted publications about other cultures.

### Claim 7: Civil Conspiracy

In Mr. Passmore's final claim, he asserts a conspiracy claim under 42 U.S.C. § 1985(3), alleging that the defendants conspired to deprive him of his constitutional rights. "The function of § 1985(3) is to permit recovery from a private actor who has conspired with state actors." *Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009). Here, all individual defendants are employees of the IDOC and therefore state actors, "so a § 1985(3) claim does not add anything except needless complexity." *Id.* It is therefore **dismissed**.

### V. Summary

The only viable claims are First Amendment free speech claims and Fourteenth Amendment equal protection claims against defendants Zatecky, McClain, Evans, and Smith, and First Amendment retaliation and negligence claims against defendants McClain, Evans, and Smith. All other claims have been dismissed. If Mr. Passmore believes that additional claims were alleged in the complaint, but not identified by the Court, he shall have **through September 14, 2023,** in which to identify those claims.

The **clerk is directed** to terminate Indiana Department of Correction, and to update the name of defendant "Evens"[1] to "Evans" and defendant "Smith" to "J.R. Smith."

### IV.    Request for a Temporary Restraining Order and Transfer

In Mr. Passmore's complaint, he requests "preliminary injunction relief in the form of a temporary restraining order against all [defendants] to keep them from further damages and retaliation" and "transfer to another IDOC facility to be free from further damages." Dkt. 2 at 30.

"A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need." *Turnell v. Centimark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). To obtain a preliminary injunction a plaintiff first must show that: "(1) without this relief, [he] will suffer irreparable harm; (2) traditional legal remedies would be inadequate; and (3) [he] has some likelihood of prevailing on the merits of [his] claims." *Speech First, Inc. v. Killen*, 968 F.3d 628, 637 (7th Cir. 2020). Here, Mr. Passmore has not alleged he would suffer irreparable harm absent an injunction or temporary restraining order. Mr. Passmore has obtained at least one of the books at issue in his complaint and other reading materials. Thus, he has not shown that the Court must take the extraordinary step of ordering his transfer to another prison or any other injunctive relief. If Mr. Passmore believes that a preliminary injunction is

---

[1] Mr. Passmore spelled this defendant's surname as "Evens" in the caption but as "Evans" through the rest of the complaint.

necessary, he must file a separate motion and provide a factual basis in support of the three threshold requirements necessary for preliminary injunctive relief.

### V. Service of Process

The **clerk is directed** pursuant to Fed. R. Civ. P. 4(c)(3) to issue process to defendants Warden Dushan Zatecky, M. McClain, Evans, and Smith in the manner specified by Rule 4(d). Process shall consist of the complaint, dkt [2], exhibits, dkt. [2-2], applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Order.

The **clerk is directed** to serve the Indiana Department of Correction employees electronically.

Nothing in this Order prohibits the filing of a proper motion pursuant to Rule 12 of the Federal Rules of Civil Procedure.

**SO ORDERED.**

Date: 8/17/2023

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

MICHAEL PASSMORE
962822
PUTNAMVILLE - CF
PUTNAMVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Electronic service to Indiana Department of Correction:
      Warden Dushan Zatecky
      Mailroom Supervisor J. McClain
      Internal Affair Supervisor Evans
      Lead Investigator J.R. Smith
      (All at Putnamville Correctional Facility)